UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

USA,

    Plaintiff,

v.                                                  Case No: 8:12-cv-833-T-36TBM

WALTER A. BATES and SANDRA J.
BATES,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court upon the Defendants' Motion to Dismiss (Doc. 29), Plaintiff's Response to Defendants' Motion to Dismiss (Doc. 31), Plaintiff's Motion for Summary Judgment (Doc. 30), the parties' Stipulated Facts (Doc. 38), Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 39), and Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 40).  The Court, having considered the motions and being fully advised in the premises, will deny both the Defendants' Motion to Dismiss and the Plaintiff's Motion for Summary Judgment.

### **Defendants' Motion to Dismiss**

The Complaint in this action, filed in April of 2012, alleges that Defendants were erroneously refunded over $17,000 by the Internal Revenue Service ("IRS") and have refused to return these funds. Defendants' motion to dismiss is based solely on their disagreement with the facts presented in the Complaint.

When ruling on a motion to dismiss the Court must accept as true the factual allegations in the complaint. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Thus, a motion to dismiss cannot be granted on the basis of a factual dispute by the Defendants. Furthermore, Defendants' motion to dismiss is procedurally improper because it was filed two years after Defendants' answer to the complaint was filed. *See* Doc. 16. Motions to dismiss under Rule 12 must be filed *before* an answer is filed. *See* Fed. R. Civ. P. 12(b); *Leonard v. Enter. Rent a Car,* 279 F.3d 967, 971 n.6 (11th Cir. 2002) ("by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief.").

However, Plaintiff suggests that rather than denying the motion outright, this Court should treat the motion to dismiss as a motion for summary judgment. *See* Doc. 31 at p. 4. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). For purposes of responding to the converted summary judgment motion, the United States has incorporated by reference its own summary judgment motion (Doc. 30). *See* Doc. 31 at n.1. Accordingly, the Court will treat Defendants' Motion to Dismiss as a motion for summary judgment and consider the merits of said motion along with Plaintiff's Motion for Summary Judgment.

<u>**The Motions for Summary Judgment**</u>

I. **Factual Background**

Based on the record before this Court, the following facts are undisputed.

Defendant Walter A. Bates ("Mr. Bates") retired as a pilot from United Airlines, Inc. ("United") on December 1, 2003. Doc. 38 ¶ 1. After retiring from United, Mr. Bates began receiving payments from the United's Pilots' Fixed Benefit Retirement Income Plan ("The

2

Qualified Plan") and the United Airlines, Inc. Pilots' Supplemental Plan, a non-qualified defined benefit pension plan sometimes identified by the number 1051 UU3 ("The Plan"). *Id*. ¶¶ 2-3. On January 26, 2004, United sent a letter to Mr. Bates stating that it had paid, on his behalf, $14,838.91 in FICA taxes based on the present value of The Plan. Doc. 30-3 at p. 11. The letter explained that United planned to recuperate these pre-paid taxes from Mr. Bates by withholding from his supplemental pension payments in March, April and May of 2004. Doc. 30-3 at p. 11.

Mr. Bates and his wife Sandra J. Bates ("Mrs. Bates") filed joint federal income tax returns for 2003 and 2004. Doc. 38 ¶¶ 6-7. At the time of Mr. Bates' retirement, United had been reorganizing under Chapter 11 of the Bankruptcy Code, since filing a petition in the United States Bankruptcy Court for the Northern District of Illinois on December 9, 2002. *Id*. ¶ 8. At the time of Mr. Bates' retirement, United reported to the IRS that its calculation of the present value of Mr. Bates' benefit from The Plan was $1,023,373.03. *Id*. ¶ 9. United determined the FICA tax due on the present value of Mr. Bates' benefit from The Plan to be $14,838.91. *Id*. ¶ 10. During 2004 and 2005, The Plan paid Mr. Bates a total of $131,217.02 before all payments under The Plan were ceased in accordance with rulings made in United's bankruptcy. United's obligation to pay Mr. Bates the deferred payments under The Plan was discharged in United's bankruptcy, and Bates will receive no further payments from The Plan.

The Bates' claim for refund was received by the IRS on January 28, 2008. On May 9, 2008, the IRS denied the Bates' claim for refund. This denial was appealed to the Office of Appeals, an independent organization within the IRS whose mission is to help taxpayers and the Government resolve tax disagreements. *Internal Revenue Service Appeals*, http://www.irs.gov/Individuals/Appeals...-Resolving-Tax-Disputes (last visited January 28, 2015). The Office of Appeals is an alternative to litigation and its mission is to reach a settlement between the parties. *See id.*

On May 26, 2009 another retired United pilot named William Koopmann filed a lawsuit in the Federal Claims Court against the United States seeking, *inter alia*, a refund of the FICA taxes paid by United relating to his retirement. *See* Doc. 29-3; Doc. 30-1 ¶4; Doc. 30-7 at p. 2. Koopmann purported to represent over 160 other retired United pilots, including Mr. Bates.[1] *See* Doc. 29-3; Doc. 30-1 ¶4; Doc. 30-7 at p. 2. On November 18, 2009, the Federal Claims Court granted the Government's motion to strike all plaintiffs except Koopmann from that suit, noting that Koopmann, the only person to sign the complaint, could not represent these other individuals because he was not an attorney. *Id.* at p. 2.

On April 16, 2010, the Office of Appeals ("OA") sent a letter to Mr. & Mrs. Bates indicating that it was "allowing the full amount of [their] claim." Doc. 43-1 at p. 2. On May 17, 2010, the United States Treasury issued Mr. & Mrs. Bates a refund of $17,742.33. On May 26, 2010 the Federal Claims Court's Order striking the names of all plaintiffs except Koopmann from *Koopmann v. U.S.* was vacated. *See* Doc. 29-4 at p. 6. The Court also stayed all claims in *Koopmann* to give the plaintiffs an opportunity to obtain counsel. *Id.* Accordingly, as of May 26, 2010 Mr. Bates was listed as a *pro se* party in the *Koopmann* case.

By letter dated January 27, 2011, the IRS requested that Mr. & Mrs. Bates return the $17,742.33 refund no later than February 4, 2011. Doc. 30-11 at pp. 2-3. In this letter the IRS alleged that the refund was erroneous because the claim for refund was untimely and because Mr. & Mrs. Bates were plaintiffs in the *Koopmann* case and, therefore, the IRS did not have authority to grant the refund. *Id.* at p. 2. On February 14, 2011, Mr. Bates sent a short letter to the IRS stating:

---

[1] Mr. Bates did not sign the *Koopmann* complaint. At some point, Mr. & Mrs. Bates filled out a "Plaintiff Information" sheet that displayed the *Koopmann* case style and number at the top. Doc. 30-3 at p. 54. There is no evidence of when this document was completed or for what purpose. This document was filed in the *Koopmann* case on May 26, 2010. *See* Doc. 30-8 at p. 2.

> I have received your letter dated Jan 27, 2011. As you noted, I am a plaintiff in an ongoing lawsuit in the Court of Federal Claims against the IRS, for refund of these excess FICA taxes. Therefore, I intend to wait for the conclusion of that litigation before taking further action. If you should win I will return the refunded amount and interest, as the Court orders.

Doc. 30-12 at p. 2.

On June 29, 2012 the United States filed a motion in the *Koopmann* case seeking dismissal of Mr. & Mrs. Bates from that lawsuit because they had already received a refund. Even though Mrs. Bates was never a party to the *Koopmann* case, both Mr. & Mrs. Bates signed and filed a response to the motion to dismiss on July 19, 2012. This motion to dismiss is still pending in the *Koopmann* matter.

Mr. & Mrs. Bates have not yet returned the $17,742.33 refunded to them by the United States Treasury on May 17, 2010.

## II.     Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324.  Issues

of fact are genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

### III. Discussion

The United States has brought this action under 26 U.S.C. § 7405 to recover the money refunded to Mr. & Mrs. Bates.

> To prevail in an action brought under § 7405(b), the Government must prove that: (1) a refund of a sum certain was made to a taxpayer; (2) the tax refund was erroneously issued; and (3) the lawsuit to recover the erroneously issued taxes was timely filed. See 26 U.S.C. § 7405(b). Recovery of erroneous refunds under § 7405 is only allowed if the suit is brought within two years of the issuance of the refund, but the suit may be brought at any time within five years of the issuance of the refund "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." 26 U.S.C. § 6532(b). "Statutes of limitations sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. C.I.R.*, 464 U.S. 386, 391, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984).

*United States v. Brokemond,* 304 Fed. Appx. 765, 766 (11th Cir. 2008). Here, the parties do not dispute that the refund was issued on May 17, 2010 and this lawsuit was filed on April 17, 2012. Accordingly, the suit was timely filed. The parties have also stipulated that a refund of a sum certain was made to Mr. & Mrs. Bates. Thus, the question before this Court is whether the tax refund was erroneously issued. Genuine issues of material fact exist as to this question.

Plaintiff argues that the refund was erroneous because (1) Defendants' 2008 refund claim was untimely; and (2) the IRS lacked authority to issue the refund because Walter Bates was a

6

plaintiff in a case that had been referred to the Department of Justice (DOJ) at the time. Defendants argue that the claim was not untimely, that they were not plaintiffs in any lawsuit when the refund was issued, and that the Government does not have the authority to recover a refund issued by the OA.

Very little information has been presented by the parties regarding the proceedings that transpired before the OA. Following an Order entered by this Court, the Government filed a copy of the letter from the OA to Mr. & Mrs. Bates informing them that the OA is "allowing the full amount of [their] claim." Doc. 43-1 at p. 2. However, the record still does not contain an explanation of the decision by the OA and the Court is not aware of whether the payment from the U.S. Treasury was part of a settlement or the result of a factual and legal determination by an Appeals Officer.

In Defendants' responses to the Government's Interrogatories, they cite language from the IRS policy manual which indicates, in relevant part, that

> A case closed by Appeals on the basis of concessions made by both Appeals and the taxpayer will not be reopened by actions initiated by the Service unless the disposition involved fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or discovery that a return contains unreported income, unadjusted deductions, credits, gains, losses, etc. resulting from the taxpayer's participation in a listed transaction, and then only with the approval of the Appeals Director of Field Operations or Appeals Director of Technical Services.
>
> . . . .
>
> A case closed by Appeals on a basis not involving concessions made by both Appeals and the taxpayer will not be reopened by action initiated by the Service unless the prior disposition involved fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or such other circumstances that indicates that failure to take such action would be a serious administrative omission, and then only with the approval of the Appeals Director of Field Operations or Appeals Director of Technical Services. The discovery that a return contains

7

> unreported income, unadjusted deductions, credits, gains, losses, etc. resulting from the taxpayer's participation in a listed transaction will constitute a serious administrative omission warranting reopening.

I.R.M. 1.2.17.1.3 (01-05-2007) Policy Statement 8-3 (Formerly P-8-50). These same provisions can be found in 26 C.F.R. § 601.106(f)(9)(vii)(h). The Bates have also cited a section of the Manual that addresses how the IRS may voice disagreements with OA determinations. *See* I.R.M. 8.6.4.1.9 (12-17-2013).

The Government does not specifically address these provisions and, without any record of the proceedings before the OA, the Court cannot determine whether these policies apply and, if so, whether they were followed. Thus, it is unclear whether this Court even has authority to grant the relief requested. *See, e.g., Johnson v. United States,* 54 Fed. Cl. 187, 192 (Fed. Cl. 2002) ("Pursuant to 26 C.F.R. § 601.106(a)(1)(ii), the Internal Revenues Service's Appeals Division has the final and exclusive jurisdiction to bind the government to its decision, and both the chief and associate chief have the authority to approve final settlements."). Because genuine issues of material fact exist, the Court cannot grant summary judgment, as a matter of law, to either party on this record. Accordingly, it is hereby

**ORDERED AND ADJUDGED that**:

1. Defendants' Motion to Dismiss, construed as a Motion for Summary Judgment (Doc. 29) is DENIED; and

2. Plaintiff's Motion for Summary Judgment (Doc. 30) is DENIED.

**DONE AND ORDERED** in Tampa, Florida on July 17, 2015.

Charlene Edwards Honeywell
United States District Judge

8

Copies to:
Counsel of Record and Unrepresented Parties, if any